Reese, J.
delivered the opinion of the court.
These are causes arising under the act of 1741, c 14, against the putative fathers of bastard children. And the question presented by the records for our determination is, to which court, the county or the circuit court, does the jurisdiction over such causes appertain? To determine this question we must refer to the acts 1835, c 6 and c 5.
The seventh section of the act of that year, c 5, confers upon the circuit courts general jurisdiction in all suits of law, and to administer right and justice according to law in all cases where the jurisdiction is not conferred upon another tribunal. They also have exclusive jurisdiction in all causes triable by jury, both criminal and civil, of which the county courts had jurisdiction. Upon the county courts, by the third section of the act of 1835, c 6, is conferred jurisdiction by the laws then in force, except that they shall not have jurisdiction of any pleas, real, personal, or mixed, nor of any cause civil or criminal, wherein by the constitution and existing laws of this state the parties are now entitled to a trial by jury, nor shall said court have power to empannel a jury in any cause whatever.
Before the passage of these acts the jurisdiction of the county court was exclusive in questions of filiation arising under the act of 1741, c 14. The bond which that act requires to be given for the indemnification of the county, is to be made payable to the justices of the county court. One condition of the bond is, that the party shall perform such order, touching the maintenance of the bastard child, as that court may from time to time make. The act of 1822, c 29, § 2, provides that at the end of three years allowances shall cease, and that the county court shall dispose of the bastard child as shall most conduce to its interest, either by giving it to the reputed father, or binding it out to some suitable person in their discretion.
*126 This whole proceeding of filiation partakes in its character of a county, rather than any more general interest, and the ¡chief object is to indemnify the county against liability to ,maintain a pauper. It is a matter of county business.
What then has taken from the county court a jurisdiction so natural and so proper to it, and which it has so long possessed? It is said to be the act of 1835, above .quoted, in connection with the provision of the first section of the act of 1822, c 29, which permits the putative father to file on oath a negation of the charge, upon which being done, “the court may hear proof and determine the matter as to right .and justice may appertain.” This, it is said, entitles the party to a jury, and of course, the acts of 1835 transfer the jurisdiction to the circuit court. Within a short time after the passage of the act of 1822, the supreme court in the case of Goddard vs. The State, 2 Yerger 96, determined that the court could, in the language of the act, hear the proof and determine the matter, and that the parties had no right to a jury.
This cotemporaneous decision has not since been overruled. In the case of The State vs. Coatney, 8 Yer. 210, there seems indeed to have been a jury in the county court. But that circumstance constituted no part of the discussion before the court, and forms no ground of the decision. And, indeed, it would follow; that if the court might hear and determine the m.atter, they might, if they saw fit, perhaps have the aid of a jury, without such proceeding constituting an error for which the supreme court would reverse.
These questions of filiation therefore are not jury causes, ;and by the very terms of the third section, of the act of 1835, c 6, are left with the county court, while there is nothing in the seventh section., of the act of 1835, p 5, to transfer the jurisdiction to the circuit court.
The judgment, therefore, in these cases will be reversed, and the parties be bound to the county court to be proceeded against.